UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLEVELAND CHRISTOPHER BYNUM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | NO. 3:05-CV-374 PS |
| ) | |
| ED BUSS, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Cleveland Christopher Bynum was convicted in Lake County, Indiana of murdering five people during a rampage in the wee hours of February 17, 2000. Before the Court is Bynum's Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254. The petition claims that he received ineffective assistance of trial counsel. Although I have substantial misgivings about the representation that Bynum received at his trial, because the Indiana Court of Appeals did not render a decision that involved an unreasonable application of federal law, the petition is DENIED.

## FACTUAL BACKGROUND

In the evening hours of February 16, 2000 Bynum got into an argument with an individual named Anthony Jeffers.[1] Evidently, Bynum had received word that Jeffers was making statements to others that Bynum was a drug dealer and Bynum did not take kindly to it. Elizabeth Daily-Ayres witnessed the original confrontation between Bynum and Jeffers. A few

---

[1] The facts are primarily derived from the Indiana Court of Appeals opinion from Bynum's direct appeal and from the appeal of the denial of his state post-conviction relief petition. (*See* Resp. Ex. E and Ex. K.)

1

hours later – by now it was early the next morning – the argument started again.  The argument took place in Jeffers' residence which he shared with Angie Wallace.  Three others – Angie's 18-month old daughter, her sister Susan Wallace, and Susan's 13-year old son ("LB")  – were all present in the residence at the time of the second confrontation.  LB heard the argument come to an end and then heard Jeffers make a phone call to his brother.  A while later, LB was awakened by five loud, banging noises, which were presumably gun shots.  After the shots, LB heard Bynum talking to another man.  LB had only met Bynum once before so his identification of Bynum's voice in the next room was questionable.  After Bynum and the other man left, LB found Jeffers, Angie and his mother Susan dead from gunshot wounds.  The 18-month old daughter was found in the room covered with blood, but fortunately her life was spared.

That same night, Sheila Bartee and Elizabeth Daily-Ayres were staying at the residence of Michelle Fliris.  Daily-Ayres used the telephone to page someone and then received a call a few minutes later.  Shortly thereafter, Bartee and Daily-Ayres left Fliris' house with plans to go to a liquor store.  A few hours later, Fliris awoke to find that Daily-Ayres and Bartee had not returned from the liquor store.  Fliris found a piece of paper near the telephone that contained the name "Chris" and a telephone number.  (Bynum's middle name is Christopher and his nickname is Chris.)  The next day, the bodies of Daily-Ayres and Bartee were found at a baseball park.  Both women died from gunshot wounds.

Bynum was arrested the following day and held on a probation violation.  While he was in custody, Bynum gave two statements to officers from the Gary Police Department, one on the day of his arrest and another two days later, on February 20, 2000.   Prior to each statement, Bynum was advised of his Miranda rights and signed a waiver that included a statement that he

2

was aware of his rights, did not want an attorney present during the questioning and that the statements were made voluntarily and without threats or promises having been made to him.

In both statements, Bynum confessed to shooting Jeffers, Angie Wallace, and Susan Wallace. As for the murders of Bartee and Daily-Ayres, Bynum admitted that he knew Daily-Ayres and that she had his pager number. In his first statement, he indicated that Daily-Ayres and Bartee were present in Jeffers' residence when Jeffers (and Angie and Susan Wallace) were shot. After the shootings, Bynum claimed that Daily-Ayres and Bartee left with two other men who were present and who he identified as Deandre MacIntosh and Terrell Jackson. While he admitted to knowing that the two women were going to be killed, he denied participating in the murders.

In the second statement, Bynum changed his story. He exonerated MacIntosh and Jackson, but this time he pointed the finger at Jeffers. Bynum claimed that Jeffers shot Daily-Ayres and Bartee with Bynum's gun and in his presence. Then, according to Bynum, Jeffers ordered him to drag their bodies to the spot where they were dumped.

Bynum was charged in Lake County, Indiana with five counts of murder and was later convicted after a trial. He was sentenced to 300 years. Not surprisingly, Bynum's partial confession was the centerpiece of the prosecution's case.

Bynum claimed that his confession was coerced. Prior to trial, Bynum told his attorney, Charles Graddick, that the police had threatened him with physical violence when he repeatedly requested an attorney, handcuffed him to a chair for nine hours during the interrogation, deprived him of food, water and the use of a bathroom, and threatened to arrest Bynum's fiancé if he did not confess. Despite this evidence, Graddick did not move to suppress the confession prior to trial. According to Graddick, he did not want to expose his trial strategy during a

3

pretrial suppression hearing.  Instead, Graddick chose to wait until trial to move to suppress the statements.  His principal argument during the mid-trial suppression hearing was that Bynum's confession was coerced.  The three officers who took the statements from Bynum all testified that this wasn't so.  Surprisingly, Graddick chose not to put Bynum on the stand during the suppression hearing.  It is difficult to see how Graddick was going to prove that the confession was coerced without having Bynum – the person who was supposedly coerced – testify to that fact.  As Graddick explained later at the post conviction relief (PCR) hearing, he thought that the best way to establish that the confession was coerced was to try and get the police who took the confession to tell inconsistent stories.

Bynum filed a direct appeal of his conviction.  On November 5, 2001, the Indiana Court of Appeals affirmed Bynum's conviction and sentences.  (Resp. Ex. E.)  On January 25, 2002, the Indiana Supreme Court refused to grant transfer.  (Traverse Ex. A.)  On August 8, 2002, Bynum filed a PCR petition.  (*Id.*)  On June 15, 2004, the trial court denied the petition in a written order.  (Traverse Ex. B.)  On February 4, 2005, the Indiana Court of Appeals affirmed the trial court (Resp. Ex. K), and on April 14, 2005, the Indiana Supreme Court refused to grant transfer. (Resp. Ex. G).

Mr. Bynum, proceeding *pro se*, then filed the current § 2254 habeas corpus petition.  After the respondent filed a response, Bynum obtained counsel who filed a traverse on his behalf.[2]

---

[2] Unfortunately, counsel for Mr. Bynum in this Court, Nathaniel Ruff, passed away earlier this year after completing his work on this case.  The time and effort that Mr. Ruff put into this case is a testament to his professionalism.  His work is much appreciated and substantially assisted the Court to reaching a fuller understanding of the relevant facts and applicable law in this case.

**DISCUSSION**

In the petition before this Court, Bynum's claims are (1) that his trial counsel was ineffective in failing to adequately review the state's discovery, his own notes, and Bynum's letters to him before trial, and by failing to spend sufficient time discussing the case with Bynum, his family and witnesses; and (2) that his trial counsel was ineffective in failing to adequately seek to suppress Bynum's two statements to the police.  The first argument is readily disposed of on procedural grounds.  The second argument, while having substantial merit, is also denied because the decision by the Indiana Court of Appeals was not an unreasonable application of clearly established federal law.

> **A.     Petitioner's first claim is barred because Petitioner failed to exhaust his state court remedies.**

The doctrine of procedural default precludes a federal court from reaching the merits of a habeas petition if the petitioner did not properly assert his federal claim at each level of state court review.  *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).  If a federal claim is not fairly presented to the state courts, procedural default prevents a federal court from granting habeas relief unless the petitioner demonstrates cause and resulting prejudice, or that denial of relief would result in a "fundamental miscarriage of justice."  *Id.; Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1997).  To show cause and prejudice, the petitioner must demonstrate that an external impediment blocked the petitioner from asserting his claim in state court, and that the resulting errors worked to the petitioner's actual disadvantage, infecting the entire trial with errors of a constitutional dimension.  *Lewis,* 390 F.3d at 1026.  Alternately, a "fundamental miscarriage of justice" requires a showing that but for the state court errors, no reasonable juror would have found the petitioner guilty of the offense.  *Id.*

Bynum raised the first claim regarding his attorney's alleged general laziness in his initial petition for post conviction relief. (Traverse Ex. C at 9.) However, Bynam did not raise the issue in his appeal from the trial court's ruling, or in his petition for transfer to the Indiana Supreme Court. (Resp. Ex. H at 4; Resp. Ex. L at 3.) Because Bynum did not fairly present his first claim to the appropriate state courts, the claim is barred unless Bynum can demonstrate cause and resulting prejudice, or that denial of relief would result in a "fundamental miscarriage of justice." *Wainwright*, 433 U.S. at 87-88.

In his traverse in this Court, Bynum did not address the procedural default of the first ground for relief. Thus, Bynum has not alleged that any external impediments prevented him from properly raising this claim to the state courts. Nor has he attempted to show that but for trial counsel's ineffectiveness, no reasonable juror would have found him guilty. Thus, Bynum has not shown cause and prejudice, or any possible fundamental miscarriage of justice. Consequently, Bynum's first claim is barred by procedural default.

> **B.     Petitioner's second claim is rejected because the ruling of the Indiana Court of Appeals was not an unreasonable application of clearly established federal law**.

Bynum's second ground for relief is best described in his own words taken directly from the petition:

> Attorney Graddick failed to move to suppress the statements prior to trial; Graddick told the petitioner that he would move to suppress the statements prior to trial; Attorney Graddick's performance at the suppression hearing was ineffective on its face; Attorney Graddick failed entirely to present any of the evidence available going to the suppression of Bynum's Statements to police; Attorney Graddick failed to have the petitioner testify at the suppression hearing. The petitioner would have testified as to substantial grounds for suppressing the two statements as not voluntary and a violation of constitutional rights and protections, including:

6

> A. The petitioner repeatedly asked for an attorney while he was being held at the Gary Police Department.
>
> B. Some fifteen hours passed before the petitioner gave the first statement, and fifty-six hours before the second statement, which themselves under facts and law raise questions as to their voluntariness.
>
> C. The petitioner was shown his fiancee, Shenita Walker, in custody at the police station. The police told the petitioner that they would charge Shenita Walker and she would go to jail if petitioner did not cooperate. The police threatened the petitioner with the loss of his and Shenita Walker's 1-year-old son unless he cooperated.
>
> D. After the first statement, the petitioner was kept incommunicado from anyone and again denied a lawyer despite requesting one.
>
> E. The police told the petitioner he had better come up with a changed statement because "Shakey" knew the petitioner had implicated him in all five murders, that "Shakey" was going to be released and would in effect do harm to the petitioner's family.
>
> At the suppression hearing, attorney Graddick failed to present any evidence or argument of the arrest of Shenita Walker and the petitioner's knowledge of it.

(Pet. at ¶ 12.B.)

The Court of Appeals of Indiana rejected Bynum's claim regarding Graddick's handling of the suppression motion, and the Indiana Supreme Court denied transfer. In analyzing this argument, the Indiana Court of Appeals applied the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). (Resp. Ex. K at 7-8.) A petitioner asserting an ineffective assistance of counsel claim under *Strickland* must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Goodman v. Bertrand*, 467 F.3d 1022, 1027 (7th Cir. 2006). Counsel's performance is deficient when the representation falls below an objective standard of reasonableness under prevailing professional

7

norms. *Id.* To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

On the first *Strickland* prong, the Court of Appeals of Indiana found that, "While Graddick's efforts were ultimately unsuccessful, our review of the trial transcript leaves us with a firm conviction that the representation was not deficient." (Resp. Ex. K at 10.) As for the second *Strickland* prong, the Court of Appeals stated that,

> Assuming Bynum's PCR testimony had been offered at trial, there is not a reasonable probability that the trial court would have concluded the statements were inadmissible. At trial, the three detectives provided consistent testimony that contradicted Bynum's assertions and the State introduced Bynum's two signed waiver forms executed before each statement was made. Bynum is correct that a defendant's assertions cannot be discounted merely because of his status as a defendant or the heinousness of the underlying crimes. But a court also cannot be expected to accept wholesale unsubstantiated accusations of egregious police misconduct. Thus, even if Bynum could demonstrate deficient performance, he cannot demonstrate prejudice.

(Resp. Ex. K at 11-12 (footnotes omitted).)

My job is to determine whether these decisions of the Indiana Court of Appeals were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). It is not enough that the Indiana Court of Appeals was merely incorrect or erroneous in its application of federal law. *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Rather, to prevail, Bynum must show that the decision was "unreasonable." As the Seventh Circuit has stated, "an unreasonable state court decision is one lying well outside the boundaries of permissible differences of opinion or one that is at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Badelle v. Correll*, 452 F.3d 648,

8

655 (7th Cir. 2006) (internal quotations and citations omitted); *see also Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007).

In this case, the Court has grave concerns about Graddick's representation of Bynum. Without the confession, the evidence against Bynum was undoubtedly weak. Aside from the skimpy circumstantial evidence, the evidence consisted mostly of the testimony LB – a 13-year old boy of one of the decedents. LB did not see Bynum kill anyone; instead, he heard Bynum's voice from another room. Yet LB had only heard Bynum's voice one time. What's more, there was no forensic evidence produced at trial and no other eye witnesses.

It is clear that any lawyer representing Bynum would have known that the case largely would rise or fall on an attempt to suppress his confession. Yet Bynum's lawyer did not file a suppression motion until the middle of trial. With a jury waiting in the wings, a mid-trial suppression hearing probably did not make the trial judge particularly pleased. Indeed, the trial judge sent the jury out of the courtroom and told them the recess would be for ten minutes. (Trial Tr., Vol. 3, at 278.) It lasted much longer than that. (*Id.* at 307.) In any event, at that hearing Graddick put on absolutely no evidence of coercion. It is entirely unclear how a motion to suppress an allegedly coerced confession could have any chance of success without at least some evidence of coercion. Graddick essentially hoped that the police would confess on the stand. But this is not a trial strategy; it is television fantasy. The possibility of inconsistent police testimony is certainly worth exploring, but that alone is insufficient to warrant suppression without at least some evidence of coercion. Only Bynum could have provided such evidence. Indeed, in his PCR testimony Bynum recounted in substantial detail how he was allegedly coerced into confessing.

It is equally unclear how putting Bynum on the stand to testify that he was coerced could possibly prejudice his defense, as Graddick claimed, even if he was brutally impeached during cross-examination. The suppression hearing was held outside of the presence of the jury and "testimony at a hearing on a motion to suppress is not admissible at trial as evidence of the defendant's guilt." *Thomas v. State*, 734 N.E.2d 572, 574 (Ind. 2000).

The opinion of the Court of Appeals of Indiana that Graddick's failure to put Bynum on the stand during his suppression hearing was a legitimate trial strategy was an unreasonable application of the *Strickland* standard. While I do not lightly make this determination, in reviewing this case under an objective standard of unreasonableness, *see Raygoza*, 474 F.3d at 964, I can come to no other conclusion. Graddick was ineffective for not putting Bynum on the stand because it was the only evidence of coercion that he had and because doing so would not have prejudiced his client even if he had been impeached as Graddick feared. Such incompetence by Graddick clearly fell below an objective standard of reasonableness under prevailing professional norms.[3] *See, e.g.*, *Barrow v. Uchtman*, 398 F.3d 597, 605 (7th Cir. 2005) (finding that counsel's failure to present a defense based at least in part on an erroneous understanding of state law "fell well outside the 'range of competence demanded of attorneys in criminal cases'" (citing *Strickland*, 466 U.S. at 687)), *cert. denied*, 126 S.Ct. 153 (2005).

Nevertheless, incompetence is only the first prong of an ineffective assistance of counsel claim. In addition, Bynum must demonstrate that the deficient performance prejudiced him.

---

[3] Although we find that attorney Graddick's performance fell below an objective standard of reasonableness, he did at least participate in the trial. Thus, *United States v. Cronic*, 466 U.S. 648 (1984), which has been held to apply only when the attorney fails to completely participate, is not relevant to our analysis here. *See Miller v. Martin*, 481 F.3d 468, 472-73 (7th Cir. 2007).

10

The Court of Appeals of Indiana found that it did not; its finding was not an unreasonable application of *Strickland*. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Had Bynum testified, his testimony that he was coerced into confessing would have been the only evidence that his statements were the product of coercion. (Resp. Ex. K at 12 n.4.) He failed to provide any corroborating evidence to substantiate his accusations of police misconduct. Against Bynum's lone and uncorroborated assertions stood the consistent testimony of three police officers and two waiver of rights forms signed by him. He says that he was threatened, mistreated, and denied a lawyer. The police and his waiver forms say he was not. Courts face such credibility determinations every day. Many motions to suppress are filed; few are granted. There is certainly a chance that Bynum would have prevailed on the motion to suppress, but that is not the test. *Strickland* requires a reasonable probability, not merely a chance. *See Mahaffey v. Page*, 151 F.3d 671, 684 (7th Cir. 1998) (holding that defendant could not establish the prejudice prong of *Strickland* where the attorney failed to call a witness at a suppression hearing to testify that confession may have been coerced where evidence to the contrary was overwhelming), *vacated in part on other grounds*, 162 F.3d 481 (7th Cir. 1998).

Furthermore, the Seventh Circuit requires that Bynum prove that the motion to suppress would have been meritorious. *Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1302 (2007); *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 327 (2006) (citations omitted). *See also Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (finding no prejudice when counsel "failed to present an argument that

would have failed anyway"). He cannot do so. The Indiana Court of Appeals found that "there is not a reasonable probability that the trial court would have concluded the statements were inadmissible." (Resp. Ex. K at 11.) The appeals court came to this decision after evaluating the evidence offered – the consistent testimony from the three detectives, Bynum's two signed waiver forms, and finally, Bynum's "wholesale unsubstantiated accusations of egregious police misconduct."[4] (*Id.* at 12.) The test in a habeas case is whether the state court ruling was unreasonable. We find that the appeals court's assessment was not unreasonable. In all probability, the Indiana trial court would have found that Bynum's statements were not the product of coercion. Accordingly, as to the question of whether Graddick's deficient performance at the suppression hearing prejudiced him, the Court of Appeals of Indiana reasonably applied the *Strickland* test and found no prejudice. *See Coulter v. McCann*, 484 F.3d 459, 2007 WL 1160168, at *10 (7th Cir. April 20, 2007) (deferring to state court decision where state courts did not unreasonably apply federal law).

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is **DENIED**.

Petitioner has filed a Motion requesting counsel to be appointed. His attorney Nathaniel Ruff passed away before a scheduled oral argument in this case before the Court. Mr. Ruff had filed a traverse with corresponding exhibits in support of Petitioner's claims. The Court does not believe that new counsel is necessary simply for oral argument, particularly when the Court is

---

[4] Though Bynum offered testimony from his mother and fiancé in support of his claims of police misconduct, the Indiana Court of Appeals did not consider their testimony as neither provided any independent verification of Bynum's allegations. (Ex. K at 11 n.4.) We agree with the court's analysis.

more than able to decide the merits of the petition on the papers.  Accordingly, Petitioner's Emergency Motion Requesting Appointed Counsel [DE 26] is **DENIED**.

**SO ORDERED**.

ENTERED: June 14, 2007

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT